**Archie K. USSERY, Jr., Appellant,**

**v.**

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 93–696.

United States Court of Veterans Appeals.

Argued June 8, 1995.

Decided July 11, 1995.

Audrey S. White, with whom Ruth Eisenberg was on the brief, for the appellant.

Barbara J. Finsness, with whom Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, and Adrienne Koerber, Deputy Asst. Gen. Counsel, were on the brief, for the appellee.

Before FARLEY, MANKIN, and HOLDAWAY, Judges.

FARLEY, Judge:

This is an appeal from a June 30, 1993, decision of the Board of Veterans' Appeals (BVA or Board) which denied the appellant's claim for residuals of pneumonia, including schizophrenia, seizure disorder, and atypical organic brain syndrome. A timely appeal to this Court followed. The Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). For the reasons set forth below, the Court will vacate the Board's decision and remand the matter for readjudication consistent with this opinion.

## I.

The appellant served on active duty with the U.S. Army from February 1, 1956, until he was honorably discharged on February 13, 1958. Record (R.) at 17. His service medical records (SMRs) are unavailable due to a fire at the National Personnel Records Center in 1973. R. at 115. In September 1989 the appellant applied for disability compensation for "resporitory [sic], bronical [sic], organic brain sydome [sic], nervous condition and pneumonia." R. at 24. On his application, the appellant stated that he had received treatment for three months while in service in 1956 for pneumonia, which "caused brain trouble." *Ibid.* The appellant submitted three letters from his private psychiatrist, Dr. Richoux, who provided diagnoses of atypical organic brain syndrome with psychotic features. R. at 28, 139, 186. In the latest letter, dated July 25, 1991, Dr. Richoux stated, "In considering Mr. Ussery's history, it is my opinion that there is a significant possibility of a causal link between an extended febrile illness which Mr. Ussery suffered in 1956 and the onset of his organic brain syndrome." R. at 186.

There are two VA diagnoses in the record. The first, dated December 8, 1988, noted: "Pt. has a confused history. OBS? [organic brain syndrome] never clarified. Seizure disorder? also not clear." R. at 48. The second, dated December 18, 1988, diagnosed "chronic paranoid schizophrenia." R. at 50. The record also contains various diagnoses by private physicians from 1976 to 1980: "obsessive compulsive neurosis versus schizophrenia" (R. at 209–10); "adjustment reaction with depressive and paranoid features— possibly 'borderline'" (R. at 220–21); "Schizo-effective [sic] schizophrenia with chronic depressed features.... Obsessive compulsive personality" (R. at 243); "Schizo-affective schizophrenia" (R. at 251, 254, 331); "Organic Brain Syndrome possibly [secondary] to ECT Encephalopathy" (R. at 283); and "paranoid schizophrenia." R. at 382. (Encephalopathy is "any degenerative disease of the brain." *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 550 (27th ed.1988)). The record does not contain records of diagnoses or treatment of the appellant from 1958 to 1976.

In April 1990, the VA regional office (RO) denied the appellant's claim, stating that pneumonia "[was] not shown by the evidence of record. Schizophrenia and seizure disorder shown many years after service, not incurred in or aggravated by service and not shown within one year of discharge." R. at 98. The appellant submitted a Notice of Disagreement (R. at 102) and perfected his appeal to the BVA (R. at 113). During the

processing of this appeal, the BVA remanded the matter three times to the RO: first for the RO to obtain SMRs directly from the appellant's unit where he had been assigned when he received medical treatment during service (R. at 161); second, for the RO to retrieve medical records directly from the Army hospital where the appellant had received in-service medical treatment, as well as to retrieve medical records from the U.S. Public Health Hospital in New Orleans, and, if the records confirmed the appellant's in-service treatment for pneumonia or fever, to schedule a VA neurological examination (R. at 194–95); and third, for the RO to provide the appellant another Supplemental Statement of the Case that included the text of 38 U.S.C. § 5107(a) pertaining to the requirements for a well-grounded claim (R. at 417–18).

In June 1993, the Board, in its reasons and bases statement, recounted the multiple diagnoses in the record and stated that "[r]eview of the entire, extensive medical record shows a clear history of acute onset of psychiatric disorder and the development of organic brain syndrome and seizures secondary to ECT." R. at 9. The BVA also took note of Dr. Richoux's opinion, that a causal link existed between the appellant's current mental disorder and his in-service high fever resulting from pneumonia, and characterized it as "essentially a hypothetical proposition: If the appellant suffered a prolonged high fever, then it is highly likely that it caused atypical organic brain syndrome with psychotic features and the seizure disorder. The probative value of the opinion rests entirely on the proof of the alleged fever." R. at 8. The Board found that the history given by the appellant of having had pneumonia in service, "while not directly impeached, is of *questionable credibility* ..." (R. at 9; emphasis added) and concluded that

> the appellant did not suffer a prolonged febrile illness in service. Dr. Richoux's opinion, therefore, is not probative evidence, predicated as it is on erroneous fact. The preponderance of the evidence is against a grant of service connection for residuals of pneumonia, including schizo-

phrenia, seizure disorder[,] and atypical organic brain syndrome.

R. at 10.

On appeal, the appellant seeks reversal of the Board's decision and argues that the Board's finding of a material fact, i.e., that the appellant did not suffer a prolonged high fever due to pneumonia in service, was clearly erroneous (Appellant's brief (Br.) at 12–19) and that the Board erred in concluding that the preponderance of the evidence was against the appellant's claim (Appellant's Br. at 19–22). Alternatively, the appellant argues that the case should be remanded because the Board failed in its duty to assist the veteran in developing his claim, and because the Board's reasons or bases for denying the veteran the benefit of the doubt were without merit. Appellant's Br. at 22–24. The appellant takes issue with the Board's impeachment of his statements concerning his pneumonia and high fever in service based upon medical histories taken from him many years before he filed his claim for high fevers in service. Appellant's Br. at 13–14. Finally, the appellant argues that medical evidence of other incidents of pneumonia in 1976 did not conflict with his assertions of having suffered pneumonia also in 1956 or 1957. Appellant's Br. at 14–15.

The Secretary urges that the Board's decision should be affirmed because it is predicated on a plausible basis, i.e., "there is no evidence whatsoever to establish that a *chronic* condition was incurred in or aggravated by service and that this condition *has existed continuously* from date of discharge to the present time." Secretary's Br. at 8. Even assuming, *arguendo*, that the Board erred in finding that the appellant had not suffered a high fever in service, the Secretary argues that any such error would be harmless since it could not possibly change the outcome of the appellant's claim, given the lack of continuity of symptomatology from 1956 to the present. Secretary's Br. at 13–14.

## II.

The Board is required to provide "a written statement of [its] findings and conclusions, and the reasons or bases for those

findings and conclusions, on all material issues of fact and law presented on the record...." 38 U.S.C. § 7104(d)(1). In *Gilbert v. Derwinski*, 1 Vet.App. 49 (1990), the Court wrote that

> the Board must identify those findings it deems crucial to its decision and account for the evidence which it finds to be persuasive or unpersuasive. These decisions must contain clear analysis and succinct but complete explanations. A bare conclusory statement, without both supporting analysis and explanation, is neither helpful to the veteran, nor "clear enough to permit effective judicial review," nor in compliance with statutory requirements.

*Id.* at 57 (citation omitted). The Board's decision failed to "account for the evidence which it finds to be persuasive or unpersuasive" and lacked the requisite "clear analysis and succinct but complete explanations" in a number of instances. Upon review of the record on appeal and the parties' briefs, and after the benefit of oral argument, the Court finds itself left with more questions than answers. For the following reasons, a remand is required because the BVA decision "neither provides a basis upon which to effect judicial review, nor complies with the statutory requirements." *Nash v. Brown*, 6 Vet. App. 1, 4 (1993).

■ In *Colvin v. Derwinski*, 1 Vet.App. 171 (1991), this Court stated:

> BVA panels may consider only independent medical evidence to support their findings. If the medical evidence of record is insufficient, or, in the opinion of the BVA, of doubtful weight or credibility, the BVA is always free to supplement the record by seeking an advisory opinion, ordering a medical examination[,] or citing recognized medical treatises in its decisions that clearly support its ultimate conclusions. *See* 38 U.S.C. § 4009 (1988); *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990). This procedure ensures that all medical evidence contrary to the veteran's claim will be made known to him and be a part of the record before this Court.

*Id.* at 175. Thus, while the Board is not required to accept the medical authority provided by the appellant to support his claim, it

must provide a medical basis other than its own unsubstantiated conclusions to support its ultimate decision. *Id.; see also Romeo v. Brown*, 5 Vet.App. 388, 393–94 (1993); *Simon v. Derwinski*, 2 Vet.App. 621, 622–23 (1992); *Gilbert*, 1 Vet.App. at 57–58. Here, although the record on appeal contains a number of conflicting medical diagnoses, the Board did not make a finding as to the current diagnosis of the appellant's condition based on a medical *diagnosis of record.* Instead, it provided its own diagnosis: "Review of the entire, extensive medical record shows a clear history of acute onset of psychiatric disorder and the development of organic brain syndrome and seizures secondary to ECT." R. at 9. Since no single diagnosis of record reached this combined conclusion, it appears that the BVA selected and pieced together elements of the various diagnoses of record in order to reach its own diagnostic conclusions. In so doing, the BVA impermissibly relied on its own medical opinion and, at the same time, begged the very question posed by this appeal. Similarly, the Board does not cite to any medical evidence for its medical expectation that,

> [g]iven the loss of service medical records, we cannot establish the onset of any of the appellant's claimed chronic disabilities in service.... *[W]e would expect to find some indication of ongoing residual disease process* of service origin during the 20 years between separation and the first medical evidence of any of the claimed disabilities.

R. at 9 (emphasis added).

■ In characterizing the appellant's testimony about his in-service high fever, the BVA said:

> [W]hile not directly impeached, [it] is of *questionable credibility* given his conflicting reports of pneumonia in 1956 or 1957 and six years prior to his 1977 hospitalization. The appellant never reported a history of prolonged febrile illness until seeking VA benefits, even though he had reported his medical history many times.

R. at 9 (emphasis added). The BVA thus neither found the appellant's testimony credible nor incredible, and such a non-finding is

incapable of judicial review. *See Caluza v. Brown,* 7 Vet.App. 498, 506 (1995) (finding that the Board must "analyze the credibility and probative value of all material evidence submitted by and on behalf of a claimant, and provide the reasons for its rejection of any such evidence."); *see also Gabrielson v. Brown,* 7 Vet.App. 36, 40 (1994); *Abernathy v. Principi,* 3 Vet.App. 461, 465 (1992); *Gilbert, supra.* Further, as the appellant's counsel argued both in her brief and before the Court, the reasons or bases provided by the BVA for that "conclusion" were not persuasive. The reports of two episodes of pneumonia twenty years apart are not necessarily conflicting, and the appellant's reports of a history of in-service pneumonia, recorded prior to filing a VA claim, are well documented in the record. *See* R. at 209; 225; and 293.

■ Finally, it is not clear from the BVA's decision whether the appellant was accorded the benefit of the doubt on the material fact of his pneumonia and high fever in service, as required by 38 U.S.C. § 5107(b). In its discussion of the benefit-of-the-doubt doctrine, the BVA stated that:

> The lack of service medical records inhibits the strict application of the regulation regarding continuity of symptomatology of a condition noted in service.... Nonetheless, we would at least have a basis to give the appellant the benefit of the doubt as to the fact of the alleged febrile illness were there any indication of the claimed disabilities in the time between separation and documented diagnosis. There is none.

R. at 9. This is the sum of the Board's application of the benefit-of-the-doubt rule even though it acknowledged its heightened duty by stating, "In the face of presumably lost records, the Board 'bears a heightened obligation to explain its findings and conclusions and to consider carefully the benefit-of-the-doubt rule.'" R. at 7 (quoting *Sussex v. Derwinski,* 1 Vet.App. 526, 528 (1991) (which in turn was quoting *O'Hare v. Derwinski,* 1 Vet.App. 365, 367 (1991)). It is unclear why the Board linked its benefit-of-the-doubt analysis with the need for the existence of continuity of symptoms or the onset of the condition within one year. A remand will permit the Board to apply the doctrine and to give the appropriate reasons or bases for reaching its conclusion.

## III.

Although deficiencies in the June 30, 1993, BVA decision require a remand, it must also be noted that the Court takes no position upon the ultimate resolution of the appellant's claim or the proper methodology to be employed in adjudication on remand. It may well be concluded upon examination that the appellant's condition is not organic in origin and that it would be irrelevant, therefore, whether he had an episode of pneumonia with high fever in service. On the other hand, the adjudication may continue to focus upon the factual issue of the episode of pneumonia with fever. In any event, the problems in the BVA decision with its application of the benefit-of-the-doubt requirement and its rejection of the appellant's testimony of in-service pneumonia with high fever are exacerbated by the fact that the appellant is by all accounts mentally impaired, at least to some degree, and by the fact that, through no fault of his own, his service medical records have been lost or destroyed. Under such circumstances, it is all the more imperative that the Board provide the veteran with well-reasoned findings and conclusions accompanied by an adequate explanatory statement of the "reasons or bases for those findings and conclusions." 38 U.S.C. § 7104(d)(1); *see Ascherl v. Brown,* 4 Vet. App. 371, 378–79 (1993) ("On remand, the BVA is instructed to issue a new decision supported by an adequate statement of reasons or bases."); *Peyton v. Derwinski,* 1 Vet.App. 282, 285 (1991) (Noting that the BVA decision must consist of "a written statement of [its] findings and conclusions" and the reasons or bases for those findings "[i]n order to enable a VA claimant to understand a decision and the reasons behind it.") Accordingly, the Board's June 30, 1993, decision is VACATED and the matter REMANDED for proceedings consistent with this opinion.