Citation Nr: 1607926 
Decision Date: 02/29/16 Archive Date: 03/04/16

DOCKET NO. 10-15 508 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in San Juan, the Commonwealth of Puerto Rico


THE ISSUES

1. Entitlement to service connection for a bilateral hearing loss disability.

2. Entitlement to service connection for tinnitus.

3. Entitlement to service connection for a disability of the lumbar spine.

4. Entitlement to a disability of the bilateral knees.

5. Entitlement to service connection for venous insufficiency.

6. Entitlement to service connection for hypertension.

7. Entitlement to service connection for sleep apnea.

8. Entitlement to service connection for morbid obesity. 
 

ATTORNEY FOR THE BOARD

J. H. Nilon, Counsel


INTRODUCTION

The Veteran served on active duty from September 1980 to July 1983. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal of a November 2009 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in San Juan, the Commonwealth of Puerto Rico. 

The Board remanded the claims on appeal to the Agency of Original Jurisdiction in February 2013, August 2013, February 2014 and February 2015 for additional development actions, which have now been accomplished. Stegall v. West, 11 Vet. App. 268 (1998). 


FINDINGS OF FACT

1. The Veteran had right ear hearing loss prior to service that was not aggravated during service, and his current bilateral hearing loss disability is not otherwise etiologically related to service.

2. The Veteran's tinnitus as likely as not had its onset during service.

3. The Veteran does not have venous insufficiency, sleep apnea or morbid obesity that is incurred in or otherwise related to service.

4. Chronic disabilities of the lumbar spine and the bilateral knees, to include arthritis, became manifest many years after service and are not related to service. 

5. Hypertension became manifest many years after service and is not related to service. 


CONCLUSIONS OF LAW

1. The requirements to establish service connection for a bilateral hearing loss disability have not been met. 38 U.S.C.A. §§ 1112, 1113, 1131, 1137, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.385 (2015).
 
2. The requirements to establish service connection for tinnitus have been met. 38 U.S.C.A. §§ 11112, 1113, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2015).

3. The requirements to establish service connection for a disability of the lumbar spine have not been met. 38 U.S.C.A. §§ 11112, 1113, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2015).

4. The requirements to establish service connection for a disability of the bilateral knees have not been met. 38 U.S.C.A. §§ 11112, 1113, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2015).

5. The requirements to establish for service connection for venous insufficiency have not been met. 38 U.S.C.A. §§ 1131, 5107 (West 2014); 38 C.F.R. § 3.303 (2015).

6. The requirements to establish service connection for hypertension have not been met. 38 U.S.C.A. §§ 11112, 1113, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2015).

7. The requirements to establish service connection for sleep apnea have not been met. 38 U.S.C.A. §§ 1131, 5107 (West 2014); 38 C.F.R. § 3.303 (2015).

8. The requirements to establish service connection for morbid obesity have not been met. 38 U.S.C.A. §§ 1131, 5107 (West 2014); 38 C.F.R. § 3.303 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (codified at 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, and 5126 (West 2014)) redefined VA's duty to notify and assist a claimant in the development of a claim. VA regulations for the implementation of the VCAA were codified as amended at 38 C.F.R. §§ 3.102, 3.156(a), 3.159, and 3.326(a) (2015).

The notice requirements of the VCAA require VA to notify a claimant of what information or evidence is necessary to substantiate the claim; what subset of the necessary information or evidence, if any, the claimant is to provide; and what subset of the necessary information or evidence, if any, the VA will attempt to obtain. 38 C.F.R. § 3.159(b) (2015). The Veteran received compliant VCAA notice in August 2009, and he had ample opportunity to respond prior to the rating decision on appeal. 

Concerning the duty to assist, the record also reflects that VA has made reasonable efforts to obtain relevant records adequately identified by the Veteran. As discussed below, complete service treatment records (STRs) are not available for review, having apparently been lost within VA during the course of the appeal. If service records are presumed to have been lost or destroyed while in government custody, VA's duty to assist is heightened and includes an obligation to search for other forms of records that support the claimant's case. Cuevas v. Principi, 3 Vet. App. 542, 548 (1992); Moore v. Derwinski, 1 Vet. App. 401 (1991). In this case the Agency of Original Jurisdiction (AOJ) has made diligent efforts to find treatment records from alternative sources with minimal success, and the Board finds that any further efforts to obtain STRs would probably be futile. See Sabonis v. Brown, 6 Vet. App. 426, 430 (1994) (holding that remands that would only result in imposing additional burdens on VA, with no benefit flowing to the claimant, are to be avoided). The record otherwise includes service personnel records and post-service VA and private treatment reports. The Veteran has not identified any further existing records that should be obtained before the appeal is adjudicated. The Veteran was advised of his entitlement to a hearing before the Board in support of his appeal but he declined such a hearing. 

The Veteran has been afforded a VA examination of the spine, with resulting medical opinion. Medical examination and opinion have not been obtained in regard to the other disabilities claimed on appeal (hearing loss, back, knees, venous insufficiency, hypertension, sleep apnea or morbid obesity), but there is no evidence of such disability in service or for many years thereafter, and there is no competent evidence suggesting the current conditions are related to service. Accordingly, a VA examination and opinion is not required. 38 C.F.R. § 3.159(c)(4); see McLendon v. Nicholson, 20 Vet. App. 79 (2006); see also Walker v. Shinseki, 601 F.3d 1274, 1278 (Fed. Cir. 2010) (noting that a conclusory lay statement that a current condition is related to service is insufficient to warrant a medical examination because it would "eliminate the carefully drafted statutory standards governing the provision of medical examinations and require the Secretary to provide such examinations in virtually every veteran's disability case").

The Board also notes that actions requested in the prior remands have been undertaken. In that regard, the Board sent the file back to the Agency of Original Jurisdiction (AOJ) in February 2015 because the AOJ had not submitted a request to the Records Management Center (RMC), as required by earlier remands; the Board also directed the AOJ to ask the Veteran to disclose any undocumented military service in the Reserve Component and to identify any undocumented in-service medical treatment he had received. The AOJ complied with these requirements, receiving a negative response from the RMC and no response from the Veteran. Accordingly, the Board finds there has been substantial compliance with the prior remand instructions and no further action is necessary. See D'Aries v. Peake, 22 Vet. App. 97 (2008) (holding that only substantial, and not strict, compliance with the terms of a Board remand is required pursuant to Stegall v. West, 11 Vet. App. 268 (1998)). 

Based on a review of the record, the Board finds that there is no indication that any additional evidence relevant to the issues to be decided herein is available and not part of the claims file. See Mayfield v. Nicholson, 499 F.3d 1317 (Fed. Cir. 2007). Therefore, the Board finds that duty to notify and duty to assist have been satisfied and will proceed to the merits of the issues on appeal.

Evidence and Analysis

Applicable legal principles

Service connection may be established for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303. Evidence of continuity of symptomatology from the time of service until the present is required where the chronicity of a chronic condition manifested during service either has not been established or might reasonably be questioned. 38 C.F.R. § 3.303(b); see also Walker v. Shinseki, 708 F.3d 1331, 1340 (Fed.Cir. 2013) (holding that only conditions listed as chronic diseases in § 3.309(a) may be considered for service connection under 38 C.F.R. § 3.303(b) (2015). Regulations also provide that service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability was incurred in service. 38 C.F.R. § 3.303(d).
 
Generally, in order to prove service connection, there must be competent, credible evidence of (1) a current disability, (2) in-service incurrence or aggravation of an injury or disease, and (3) a nexus, or link, between the current disability and the in-service disease or injury. See, e.g., Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Pond v. West, 12 Vet. App. 341 (1999).

Moreover, where a veteran served continuously for 90 days or more during a period of war, or during peacetime service after December 31, 1946, and arthritis, cardiovascular renal disease (including hypertension) or organic disease of the nervous system (including sensorineural hearing loss or tinnitus) becomes manifest to a degree of 10 percent within one year from date of termination of such service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137 (West 2014); 38 C.F.R. §§ 3.307, 3.309 (2015). 

When service records have been lost or destroyed in government custody, case law does not lower the legal standard for proving a case of service connection, but rather increases the Board's obligation to evaluate and discuss in its decision all the evidence that may be favorable to the veteran. Russo v. Brown, 9 Vet. App. 46 (1996). Also, where service medical records were destroyed, the veteran is competent to report about factual matters about which he had firsthand knowledge, including experiencing pain during service, reporting to sick call, and undergoing treatment. Washington v. Nicholson, 19 Vet. App. 362 (2005).

The Board has reviewed all the evidence in the record. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that all the evidence submitted by the appellant or obtained on his behalf be discussed in detail. Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate the claim and what the evidence in the claims file shows, or fails to show, with respect to the claim. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) and Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000).

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under the laws administered by VA. VA shall consider all information and medical and lay evidence of record. Where there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). To deny a claim on its merits, the evidence must preponderate against the claim. Alemany v. Brown, 9 Vet. App. 518, 519 (1996), citing Gilbert, 1 Vet. App. at 54.

In that regard, when service records have been lost or destroyed while in government custody case law does not establish a higher benefit-of-the-doubt standard, but rather heightens the duty of the Board to consider the benefit-of-the-doubt rule, to assist the claimant in developing his claim, and to explain its decision. Ussery v. Brown, 8 Vet. App. 64 (1995).

Service connection for a bilateral hearing loss disability

For the purposes of applying the laws administered by VA, impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, 4000 Hertz is 40 decibels or greater, or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, 4000 Hertz are 26 decibels or greater, or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385. Also, the threshold for normal hearing is between 0 and 20 decibels, and higher threshold shows some degree of hearing loss. Hensley v. Brown, 5 Vet. App. 155, 157 (1993). 

"[W]hen audiometric test results at a veteran's separation from service do not meet the regulatory requirements for establishing a 'disability' at that time, he or she may nevertheless establish service connection for a current hearing disability by submitting evidence that the current disability is causally related to service." Hensley v. Brown, 5 Vet. App. 155, 160 (1993). The threshold for normal hearing is from zero to 20 decibels, and higher threshold levels indicate some degree of hearing loss. Id. at 157.

The Veteran's service treatment records (STRs) are not available for appellate review. However, they were available to the AOJ at the time of the original determination, which cites to physical examinations in June 1980 (enlistment into service) and July 1983 (separation from service).

The rating decision cites the following audiological findings in the Veteran's enlistment examination:

HERTZ

1000
 2000
 3000
 4000
AVG.
LEFT
 20
 10
 25 
 25
 20
RIGHT
 10
 0
 45
 50
 26

The rating decision cites the following audiological findings in the Veteran's separation examination:

HERTZ

1000
 2000
 3000
 4000
AVG.
LEFT
 10
 15
 25 
 25
 19
RIGHT
 15
 5
 20 
 30
 18

The Board finds at this point that the enlistment examination clearly and unmistakable shows that at enlistment the Veteran had right ear hearing loss to a degree that constitutes a disability under the criteria of 38 C.F.R. § 3.385. The question accordingly arises whether the Veteran's preexisting right ear hearing loss was aggravated during service. 

In deciding a claim based on aggravation, after having determined the presence of a preexisting condition, the Board must first determine whether there has been any measured worsening of the disability during service, and then whether this constitutes an increase, permanent in nature, in the disability. Browder v. Brown, 5 Vet. App. 268, 271 (1993); Hensley, 5 Vet. App. 155, 163. Aggravation of a pre-existing injury may not be conceded where the disability underwent no increase in severity during service, on the basis of all the medical evidence of record pertaining to the manifestations of the disability prior to, during, and subsequent to service. 38 U.S.C.A. §1153; 38 C.F.R. § 3.306(b); Falzone v. Brown, 8 Vet. App. 398, 402 (1995). 

The Board finds in this case that comparison of the Veteran's audiological evaluations at entrance and separation demonstrates that the right ear hearing loss did not undergo an increase in severity during service; in fact, his bilateral hearing evaluation at discharge was better than his evaluation at enlistment. While the Board recognizes that audiological evaluations are inherently inexact, the fact remains that the Veteran's measured hearing acuity at discharge from service was no worse than his acuity at enlistment, with no significant threshold shifts indicative of worsened hearing. The Board accordingly finds that the Veteran's preexisting right ear hearing loss was not aggravated during service.

In February 1996 the Veteran had a VA clinical examination in conjunction with admission for inpatient treatment; the examination noted the Veteran to have difficulty hearing, with history of perforation. 

The Veteran had a VA audiological assessment in February 2009 that showed bilateral hearing loss to a degree considered disabling under the criteria of 38 C.F.R. § 3.385. Notably, his hearing loss was markedly more severe in the left ear than the right, which is the opposite of his pattern of hearing loss in STRs.

The Veteran had a VA audiological compensation and pension evaluation in September 2009 in which he reported having been exposed to noise during three years in service, including noise from heavy equipment and frequent range firing. No occupational or recreational noise exposure was claimed. Audiometric scores again demonstrated bilateral hearing loss, worse in the left ear. The audiologist did not provide an opinion regarding whether hearing loss is related to service.

The evidence of record demonstrates that the Veteran has a bilateral hearing loss disability. Accordingly, the first element of service connection - medical evidence of a disability - is met. However, a veteran seeking disability benefits must establish not only the existence of a disability, but also an etiological connection between his military service and the disability. Boyer v. West, 210 F.3d 1351, 1353 (Fed. Cir. 2000). 

The in-service audiological evaluations cited above affirmatively demonstrate that the Veteran had normal left ear hearing at the time of his discharge from service and that his preexisting right ear hearing loss had not been aggravated during service. There is no suggestion that the Veteran's current bilateral hearing loss became manifest to a compensable degree within the first year after discharge from service, and there is no medical opinion of record showing that the Veteran's current hearing loss disability is etiologically related to service.

In his present claim for service connection the Veteran asserted he was treated for hearing loss during service. Because service treatment records are no longer available the Veteran is considered competent to report treatment in service. Washington, 19 Vet. App. 362. However, the service records were available to the AOJ and were considered in the decision on appeal; these records show the Veteran's hearing was no worse at separation than at enlistment. The Board accordingly finds that the Veteran's account of treatment during service does not demonstrate chronic left ear hearing loss that was incurred in service or chronic right ear hearing loss that was aggravated during service. 

By submitting a claim for service connection the Veteran expressed his personal conviction that his hearing is related to noise exposure during service. However, hearing loss may be due to a number of different causes including aging, genetics, disease or acoustic trauma; the etiology of the Veteran's disability is accordingly a complex medical question that is not within his competence as a layperson. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007).

In sum, the Board finds the Veteran is not shown to have bilateral hearing loss that is incurred in or aggravated by service. Accordingly, the claim must be denied.

In reaching the above conclusion, the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the Veteran's claim, that doctrine is not applicable in the instant appeal. Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Gilbert, 1 Vet. App. 49, 55-56; Ussery, 8 Vet. App. 64.

Service connection for tinnitus

As noted above, the Veteran's service treatment records (STRs) are not available for appellate review, although they were available to the AOJ at the time of the original determination. The rating decision states that STRs then of record show no complaint of tinnitus during service, and also states the Veteran had a separation examination in July 1983 that was silent in regard to any complaint, treatment or diagnosis for tinnitus.

The Board notes that tinnitus is seldom recorded in examination reports because the standard self-reported Report of Medical History does not prompt the examinee to affirm or deny symptoms such as ringing in the ears; there is no query in the corresponding Report of Medical Examination to prompt the examiner to inquire about the presence of such symptoms, and tinnitus is a subjective disorder that does not lend itself to clinical observation. Tinnitus thus differs from hearing loss, which tends to be well-followed during service and well-documented when present. 

The Veteran had a VA audiological compensation and pension evaluation in September 2009 in which he asserted having had tinnitus since 1983. Tinnitus is a condition recognized as "chronic" under 38 C.F.R. § 3.309(a). Moreover, the Veteran is competent to state that his tinnitus began in service, because tinnitus is a condition capable of lay observation. See Charles v. Principi, 16 Vet. App. 370, 374 (2002) citing Caluza v. Brown, 7 Vet. App. 498, 504 (1995) (where determinative issue does not require medical expertise, lay evidence may suffice by itself). Here, the Board finds the Veteran's assertions that his tinnitus began in 1983 during his service and has been ongoing since that time to be credible. 

Affording the benefit of any reasonable doubt to the Veteran, the requirements for service connection are met and the claim for tinnitus is granted. 

Service connection for a disability of the lumbar spine

As noted above, the Veteran's service treatment records (STRs) are not available for appellate review, although they were available to the AOJ at the time of the original determination. The rating decision on appeal cites STRs that were then of record and include a May 1981 record of treatment for low back pain after a jeep injury in March 1981. The rating decision also states that the Veteran had a separation examination in July 1983 that was silent in regard to any complaint, treatment or diagnosis for a back condition.

The Veteran had a VA X-ray of the lumbosacral spine in November 2000. The radiologist's impression was minimal lumbar spondylosis and no other abnormalities.

The Veteran presented to the VA emergency room in December 2008 complaining of left knee pain; the clinician examined the Veteran and made no observations of any current complaints relating to the lumbar spine. However, during follow-up at the primary care clinic (PCC) in January 2009 the Veteran complained of low back pain. Musculoskeletal and neurological examination in January 2009 was normal, and no diagnosis other than "low back pain" was entered.

Dr. Jose Alvarez Montez submitted a letter in August 2009 stating he had treated the Veteran since 1995, and that the Veteran's medical problems included osteoarthritis of the lumbar spine.

The Veteran had a private magnetic resonance imaging (MRI) study of the lumbosacral spine in August 2009 that showed mild posterior disc abnormality at L4-5 and L5-S1.

The Veteran had a VA examination of the spine in September 2009, performed by an examiner who reviewed the claims file, including STRs that were on file at that time and showed the Veteran to have been treated for back pain after a jeep accident. The examiner noted the Veteran was treated in service with pain medications, and the Veteran attributed his current back pain to that accident. The examiner noted the Veteran's subjective symptoms as well as clinical observations on examination. The examiner diagnosed current lumbar strain and lumbar spondylosis, and stated an opinion that these diagnoses are not likely related to service. As rationale the examiner stated that the Veteran's strain during service was acute, with no evidence of continued symptoms or of subsequent treatment in service or within the presumptive period after service. As regards spondylosis, that diagnosis is due to aging.

The Veteran is shown to have a medically-diagnosed lumbar spine disorder (variously diagnosed as osteoarthritis, current lumbar strain and lumbar spondylosis). However, the VA examiner has provided competent and uncontroverted medical opinion stating that the Veteran's claimed disability is not related to service. The findings of a physician are medical conclusions that the Board cannot ignore or disregard. Willis v. Derwinski, 1 Vet. App. 66 (1991). 

In his present claim for service connection the Veteran asserted he had been treated for chronic low back pain during service and he specifically attributed his low back pain to the jeep wreck in March 1981. However, it is the province of trained health care professionals to enter conclusions that require medical expertise, such as opinions as to diagnosis and causation. Jones v. Brown, 7 Vet. App. 134, 137 (1994). The Board finds in this case that the Board finds the medical opinion of the examining physician is more probative than the lay opinion of the Veteran in regard to causation.

The August 2009 letter from Dr. Montez asserts that the Veteran's medical problems included osteoarthritis of the lumbar spine; the Board has accordingly considered whether presumptive service connection under 38 C.F.R. § 3.309(a) may be warranted. However, the VA X-ray of the lumbosacral spine in November 2000, more than 15 years after service, did not show any present arthritis. The Board concludes that arthritis did not become manifest within the presumptive period and in fact did not become manifest until many years after discharge from service. Accordingly, service connection may not be assigned on a presumptive basis.

In sum, the Board finds the Veteran does not have a disability of the lumbosacral spine that is incurred in or aggravated by service; accordingly, the claim must be denied. Because the preponderance of the evidence is against the Veteran's claim the benefit-of-the-doubt doctrine is not applicable. Ortiz, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Ussery, 8 Vet. App. 64.




Service connection for a disability of the bilateral knees

As noted above, the Veteran's STRs are not available for appellate review, although they were available to the AOJ at the time of the original determination. The rating decision on appeal states that STRs did not show any indication of a knee injury during service and also cites a separation examination in July 1983 that was silent in regard to any complaint, treatment or diagnosis for a knee condition.

In February 1996 the Veteran had a VA clinical examination in conjunction with admission for inpatient treatment; the examination noted the Veteran to have normal gait. 

The Veteran presented to the VA emergency room in December 2008 reporting a history of left knee injury during active service and complaining of left knee pain in recent weeks. He was referred to the VA primary care clinic (PCC), where he complained of knee pain for the past two months but denied trauma. VA X-ray of the left knee in January 2009 was essentially normal (no acute fractures or dislocations and joint spaces normal). However, VA magnetic resonance imaging (MRI) of the left knee in February 2009 showed a medial meniscus tear, mild osteoarthritis involving the medial femoral tibial and femoropatellar joints, moderate-sized joint effusion and small septated popliteal cyst.

A VA orthopedic surgery note in April 2009 reflects clinical impression of left knee mild degenerative joint disease (DJD) with meniscal lesion.

Dr. Jose Alvarez Montez submitted a letter in August 2009 stating he had treated the Veteran since 1995, and that the Veteran's medical problems included osteoarthritis of the knees. Private MRI of the left knee in the same month showed a tear in the medial meniscus, small osteochondral defect in the medial femoral condoyle and mild degenerative changes.

The medical evidence of record shows fairly regular VA and non-VA treatment for left knee problems since December 2008. Also, Dr. Montez cited osteoarthritis of the "knees," suggesting a right knee disability as well. Accordingly, medical evidence of a bilateral knee disability is shown. However, for the reasons cited below, the Board finds the Veteran's disability is not related to service.

The Veteran had a separation examination (cited by the rating decision) that essentially shows the Veteran did not have a knee disorder at the time of his discharge from service, and he had normal gait in February 1996, more than 10 years after discharge from service. The earliest medical documentation of a knee problem occurs in December 2008, 25 years after his discharge from service. There is no medical opinion of record associating the Veteran's post-service bilateral knee symptoms with injury or other event during service. 
 
The Veteran reported to a medical provider that he had a left knee injury during service, and in his present claim for service connection he reported having been treated in service for chronic pain in both knees. The Veteran is considered to be competent to report treatment during service. Washington, 19 Vet. App. 362. However, treatment for symptoms during service does not demonstrate the onset of a chronic disability during service, particularly given the absence of symptoms on his separation examination. The single document from STRs remaining in the file is a physical profile board proceedings report dated in July 1982 showing an L-1 profile, indicating that as of that time the Veteran did not have an impairment of the knees.

(The "PULHES" profile reflects the overall physical and psychiatric condition of an individual on a scale of 1 (high level of fitness) to 4 (medical condition or physical defect that is below the level of medical fitness required for retention in the military service). The "P" stands for "physical capacity or stamina," the "U" indicates "upper extremities," the "L" is indicative of "lower extremities," the "H" reflects the condition of the "hearing and ears," the "E" is indicative of the "eyes," and the "S" stands for "psychiatric condition." Odiorne v. Principi, 3 Vet. App. 456, 457 (1992). See generally Hanson v. Derwinski, 1 Vet. App. 512, 514 (1991), for an explanation of the military medical profile system.)

Based on the evidence and analysis above the Board finds the Veteran does not have a disability of the bilateral knees that is incurred in or aggravated by service; accordingly, the claim must be denied. Because the preponderance of the evidence is against the Veteran's claim the benefit-of-the-doubt doctrine is not applicable. Ortiz, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Ussery, 8 Vet. App. 64.

Service connection for venous insufficiency

As noted above, the Veteran's STRs are not available for appellate review, although they were available to the AOJ at the time of the original determination. The only document currently available is the physical profile board proceedings report dated in July 1982, which shows an L-1 profile for the lower extremities and P-1 profile for physical capacity or stamina and thus indicates the Veteran did not have a venous abnormality as of that date. The rating decision on appeal states that STRs show no indication of venous insufficiency during service and cites a July 1983 separation examination report that was silent in regard to any current venous abnormality.

The Veteran presented to the VA emergency room in December 2008 complaining of an unrelated problem (left knee pain); the clinician performed a general medical examination and added "venous insufficiency" to the Veteran's active problems list without further elaborating. Subsequent VA and private treatment records are silent in regard to any venous disorder; the VA records continue to carry "venous insufficiency" on the active problems list but do not show any associated treatment.

The Veteran has not asserted, and the evidence of record does not suggest, that he was diagnosed with a venous abnormality during service. Further, there is no medical opinion of record asserting a relationship between the claimed venous insufficiency and service, and the Veteran has not explained why he believes his claimed disability is somehow related to service. In sum, there is no medical or even lay evidence whatsoever that supports a relationship between venous insufficiency and service. 

Based on the evidence and analysis above the Board finds the Veteran does not have venous insufficiency that is incurred in or otherwise related to service; accordingly, the claim must be denied. Because the preponderance of the evidence is against the Veteran's claim the benefit-of-the-doubt doctrine is not applicable. Ortiz, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Ussery, 8 Vet. App. 64.

Service connection for hypertension

Under VA rating criteria, the term "hypertension" means that the diastolic blood pressure is predominantly 90mm or greater, and "isolated systolic hypertension" means that the systolic blood pressure is predominantly 160mm or greater with a diastolic blood pressure of less than 90mm. 38 C.F.R. § 4.104, Diagnosis Code 7101, Note (1).

As noted above, the Veteran's STRs are not available for appellate review, although they were available to the AOJ at the time of the original determination. The only document currently available is the physical profile board proceedings report dated in July 1982, which shows a P-1 profile for physical capacity or stamina and thus indicates the Veteran did not have hypertension as of that date. The rating decision on appeal states that STRs do not show hypertension during service and cites a July 1983 separation examination report in which the Veteran's blood pressure was 120/80.

Private treatment records dated in September 1995 show the Veteran's blood pressure to be 110/75, which is not hypertensive. The Veteran received VA inpatient treatment for cocaine detoxification in February 1996, and on admission his blood pressure was 120/80, which again is not hypertensive. 

The Veteran presented to the VA emergency room in December 2008 complaining of left knee pain. The clinician examined the Veteran and noted current blood pressure of 160/85 and 155/100. The clinician added hypertension to the Veteran's active problems list, and the Veteran subsequently continued to be treated for hypertension during VA follow-up.

The evidence shows the Veteran to be diagnosed with hypertension, but there is no evidence - to include lay evidence - that he was hypertensive in service. The Veteran was not hypertensive in September 1995, more than 20 years after discharge from service, and the Board concludes that he cannot have been hypertensive to a compensable degree within the first year after discharge from service; accordingly, presumptive service connection under 38 C.F.R. § 3.309(a) is not for application.

The Veteran has not explained why he believes his claimed disability is somehow related to service, and there is no medical opinion of record asserting a relationship between the claimed hypertension and service. In sum, there is no medical or even lay evidence whatsoever that supports a relationship between hypertension and service. 

Based on the evidence and analysis above the Board finds the Veteran does not have hypertension that is incurred in or otherwise related to service; accordingly, the claim must be denied. Because the preponderance of the evidence is against the Veteran's claim the benefit-of-the-doubt doctrine is not applicable. Ortiz, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Ussery, 8 Vet. App. 64.

Service connection for sleep apnea

As noted above, the Veteran's STRs are not available for appellate review, although they were available to the AOJ at the time of the original determination. The rating decision on appeal states that STRs showed no indication of sleep apnea symptoms during service and also cites a July 1983 separation examination report that is silent in regard to sleep apnea.

Private treatment records dated in September 1995 show a notation of rule out (R/O) sleep apnea.

Treatment records from Dr. Luis Alfredo de Jesus Vargas show the Veteran was diagnosed in August 2007 with severe obstructive sleep apnea (OSA) and with OSA with hypersomnia. The treatment record is silent in regard to when symptoms of OSA began or as to the etiology of the disorder.
 
The Veteran presented to the VA emergency room in December 2008 complaining of left knee pain; during that visit the clinician noted signs and symptoms suggestive of obstructive sleep apnea. Subsequent sleep studies in January and February 2009 confirmed the Veteran to have severe obstructive sleep apnea (OSA).

The evidence shows the Veteran to be diagnosed with sleep apnea, but there is no evidence - to include lay evidence - that he had the disorder during service. There is no indication of sleep apnea symptoms until 1995, more than 10 years after service, and per the letter from Dr. Vargas OSA was not actually diagnosed until 2007, more than 20 years after discharge from service. 

The Veteran has not explained why he believes his claimed disability is somehow related to service, and there is no medical opinion of record asserting a relationship between the claimed OSA and service. In sum, there is no medical or even lay evidence whatsoever that supports a relationship between sleep apnea and service. 

Based on the evidence and analysis above the Board finds the Veteran does not have hypertension that is incurred in or otherwise related to service; accordingly, the claim must be denied. Because the preponderance of the evidence is against the Veteran's claim the benefit-of-the-doubt doctrine is not applicable. Ortiz, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Ussery, 8 Vet. App. 64.

Service connection for morbid obesity 

As noted above, the Veteran's STRs are not available for appellate review, although they were available to the AOJ at the time of the original determination. The rating decision on appeal states that STRs that were then of record included a treatment form in November 1982 showing the Veteran had gained weight and had been placed on a weight management program. The rating decision also cited a July 1983 separation examination report that is silent in regard to obesity (unfortunately, the rating decision did not record the Veteran's weight as noted in the separation examination).

The Board notes that although STRs are not of record, the Veteran's complete service personnel record is associated with the claims file. The Board is aware that a soldier who is "obese" would be subject to mandatory counseling by his chain of command, and if the situation continued the soldier would be "flagged" for any favorable personnel actions and eventually discharged from service due to failure to maintain height-to-weight standards. In this case the personnel record contains numerous counseling statements relating to absence without authorization, disrespect to authority and failure to maintain satisfactory appearance (unshined shoes), but there is no mention whatever of a significant weight management problem. The Veteran's company-level commanding officer submitted a letter in July 1983 recommending the Veteran be administratively discharged from service due to nonjudicial punishment at the field-grade and company-grade levels, chronic tardiness to formations, leaving place of duty, verbal disrespect, lackadaisical attitude and substandard performance, but failure to meet Army weight standards is conspicuous by its absence. In sum, the service personnel record does not support a suggestion that the Veteran was morbidly obese during service.

In February 1996, 13 years after discharge from service, the Veteran had a VA clinical examination in conjunction with admission for inpatient treatment. The Veteran's height was 5 feet 11 inches and his weight was 258 pounds. The associated inpatient medical records do not characterize the Veteran as "obese" or "morbidly obese." 

The Veteran was treated by Dr. Luis Alfredo de Jesus Vargas for OSA in August 2007. The Veteran weighed 322 pounds, which Dr. Vargas characterized as "severely obese." 

The Veteran presented to the VA emergency room in December 2008 complaining of left knee pain. The clinician examined the Veteran and added morbid obesity to the Veteran's active problems list, apparently based on a July 2001 treatment note in which the Veteran had weighed 278 pounds. A subsequent VA PCC note in January 2009 shows the Veteran's weight as 329 pounds.

The Veteran has continued to be shown as morbidly obese in VA treatment records since December 2008, although in June 2013 his weight was down to 280 pounds.

In his claim the Veteran asserted having been treated for morbid obesity during service, but as discussed above this is inconsistent with his service personnel record. Also, there is no indication of obesity in VA and non-VA medical records prior to August 2007, which is nearly 25 years after discharge from service. Absent actual onset of morbid obesity in service, the Veteran has not explained why he believes that his post-service obesity is related to service (i.e., he does not have a service-connected disease, glandular disorder, etc. of which morbid obesity could be secondary). In sum, there is no medical evidence or credible lay evidence that associates the claimed disorder with service, and the claim must be denied. 

Because the preponderance of the evidence is against the Veteran's claim the benefit-of-the-doubt doctrine is not applicable. Ortiz, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Ussery, 8 Vet. App. 64.


ORDER

Service connection for a bilateral hearing loss disability is denied.

Service connection for tinnitus is granted.

Service connection for a disability of the lumbar spine is denied.

Service connection for a disability of the bilateral knees is denied.

Service connection for venous insufficiency is denied.

Service connection for hypertension is denied.

Service connection for sleep apnea is denied.

Service connection for morbid obesity is denied. 


____________________________________________
 MARJORIE A. AUER
Veterans Law Judge, Board of Veterans' Appeals
Department of Veterans Affairs