Citation Nr: 1736740 
Decision Date: 08/31/17 Archive Date: 09/06/17

DOCKET NO. 13-30 943 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Montgomery, Alabama


THE ISSUE

Entitlement to service connection for a psychiatric disorder, to include posttraumatic stress disorder (PTSD).


REPRESENTATION

Veteran represented by: The American Legion


ATTORNEY FOR THE BOARD

Jessica O'Connell, Associate Counsel 

INTRODUCTION

The Veteran served on active duty from December 1952 to December 1956.

This case comes before the Board of Veterans' Appeals (Board) on appeal from a June 2011 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Montgomery, Alabama.

The record before the Board consists of the Veteran's electronic records located within the Veterans Benefits Management System (VBMS) and Virtual VA.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2016). 38 U.S.C.A. § 7107(a)(2) (West 2014).


REMAND

Initially, the Board notes that the Veteran's service treatment records are unavailable. The record contains a response from the National Personnel Records Center (NPRC) which indicates that the Veteran's service treatment records were presumed destroyed in a fire at the NPRC that occurred in July 1973. The RO notified the Veteran of the unavailability of these records in an August 2010 letter in accordance with VA regulation. In a case like this in which a claimant's service records are unavailable through no fault of his own, there is a heightened obligation for VA to assist a veteran in the development of his claim and to provide reasons or bases for any adverse decision rendered without these records. See O'Hare v. Derwinski, 1 Vet. App. 365, 367 (1991); Washington v. Nicholson, 19 Vet. App. 362, 370 (2005). However, this heightened obligation does not establish a heightened "benefit of the doubt" or lower the legal standard for proving a claim of service connection. See Russo v. Brown, 9 Vet. App. 46 (1996); Ussery v. Brown, 8 Vet. App. 64 (1995).

In statements received by VA in July 2010, July 2011, and August 2014, the Veteran asserted he has PTSD resulting from witnessing the following alleged injuries and deaths of pilots on three separate occasions while stationed at Bergstrom Air Force Base in Austin, Texas. In August 1953, he indicated he was watching a flyby when two jet planes collided and a pilot was killed on ground contact. He also stated that in November 1955 he saw a crew chief catch on fire, saw that "his face, hair, and hands were terribly burned," and later learned that he died in the hospital. Finally, the Veteran reported that in October 1956, he witnessed the death of a pilot who was killed instantly while attempting to land a plane. In a reply to a January 2011 letter from the RO, the Veteran indicated that he did not know the names of the servicemembers who were killed. In his July 2010 statement, the Veteran reported that all servicemembers who were killed were members of the 27th Strategic Fighter Wing and were either assigned to the 522nd, 523rd, or 524th Strategic Fighter Squadron. The Veteran also stated that these events took place while he was an aircraft mechanic assigned to the 27th Periodic Maintenance Squadron.

The evidence of record contains a June 2014 formal finding from the RO that there was insufficient information to send to the Joint Services Records Research Center (JSRRC), National Archives and Records Administration (NARA), and Marine Corps to attempt to verify the Veteran's claimed stressors. In its September 2014 remand, the Board noted that although the Veteran first provided information regarding his claimed stressors in July 2010, no development had been initiated to attempt to verify these claimed stressors. The Board concluded that a remand was required in order for the RO to contact the JSRRC to assist in verifying the Veteran's claimed stressors and to make a specific determination as to whether the Veteran was exposed to a stressor or stressors during service. If the RO was able to determine that the record established the existence of any stressor, the RO was instructed to arrange for the Veteran to undergo a VA psychiatric examination to determine the etiology of any psychiatric disorders found. Regardless of whether any stressors could be verified, if the Veteran's claim remained denied, the RO was instructed to readjudicate the Veteran's claim and provide him and his representative with a Supplemental Statement of the Case.

While the Veteran's case was in remand status, the RO failed to send the information provided by the Veteran to the JSRRC for verification of his claimed stressors. Additionally, the RO neglected to readjudicate the Veteran's claim in a Supplemental Statement of the Case, and it was improperly returned to the Board.

In its October 2015 remand, the Board identified the RO's noncompliance with the Board's prior remand directives and again remanded the claim to complete the required development. Unfortunately, the RO once again failed to attempt to verify the Veteran's claimed stressors.

Accordingly, the Board finds an additional remand is required. The Board emphasizes that it is not satisfied with the RO's determination that the Veteran has provided insufficient evidence to attempt to verify his claimed stressors and that the information the Veteran has provided regarding his claimed stressors must be sent to the JSRRC and any other identified agency for attempted verification. The Board further emphasizes that RO compliance with remand directives is not discretionary or optional. See Stegall v. West, 11 Vet. App. 268, 271 (1998).

Following completion of the aforementioned development, the RO must make a specific finding as to whether the Veteran was exposed to a stressor or stressors in service, and if so, what was the nature of the specific stressor or stressors.

If, and only if, any of the Veteran's claimed stressors are verified, he must be afforded a VA examination to determine if he has a diagnosis of PTSD and, if so, whether it is due to any of the verified stressors. Given that the Veteran's claim was certified to the Board prior to August 4, 2014, any diagnosis of PTSD must be made in accordance with DSM-IV criteria. See Schedule for Rating Disabilities-Mental Disorders and Definition of Psychosis for Certain VA Purposes, 79 Fed. Reg. 45,093 (Aug. 4, 2014) (codified at 38 C.F.R. § 4.125a (2015)) (providing that "[t]he provisions of this interim final rule shall apply to all applications for benefits that are received by VA or that are pending before the agency of original jurisdiction on or after the effective date of this interim final rule.").

As noted in the September 2014 remand, the Veteran's claim for service connection for PTSD encompasses a claim for all diagnosed psychiatric disorders. See Clemons v. Shinseki, 23 Vet. App. 1, 5 (2009). While entitlement to service connection for PTSD requires verification of a claimed stressor, entitlement to service connection for a psychiatric disorder other than PTSD does not require verification of a claimed stressor. However, service connection for a psychiatric disorder does still require a nexus between a diagnosed psychiatric disorder and service. Therefore, regardless of whether any of the Veteran's claimed stressors can be verified, he must still be provided a VA mental health examination to determine whether any psychiatric disorders, other than PTSD, are due to his active duty service.

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Attempt to verify the Veteran's claimed stressors.

This development MUST include contacting the JSRRC and providing them with all information the Veteran has provided to the RO in letters dated July 2010, July 2011, and August 2014 regarding the alleged incidents at Bergstrom Air Force Base in August 1953, November 1955, and October 1956, to include the squadron numbers identified by the Veteran.

If the JSRRC is unable to verify the claimed stressors and identifies another agency who may be able to do so, the RO must contact the identified agency and provide all information submitted by Veteran.

All attempts to verify the Veteran's claimed stressors must be documented in the electronic claims file.

2. Following completion of the above, the RO must make a specific determination, based upon the complete record, with respect to whether the Veteran was exposed to a stressor or stressors during his active duty service. If the RO determines that the record establishes the existence of a stressor or stressors, the RO must specifically state what stressor or stressors in service it has determined are established by record. In reaching this determination, the RO should address any credibility questions raised by the record.

3. If, and only if, any of the claimed stressors are able to be verified, the Veteran must be afforded a VA PTSD examination to determine whether he has a diagnosis of PTSD under DSM-IV criteria and, if so, whether his PTSD is due to any stressor or stressors verified by the RO. The examiner must be informed that the Veteran's service treatment and personnel records are unavailable because they were destroyed in a fire.

All indicated tests and studies should be performed, to include psychological testing to determine whether the Veteran meets the DSM-IV criteria for PTSD.

The examiner should elicit from the Veteran a complete history of his psychiatric symptoms and document such in the examination report. Then, following a review of the evidence of record, and with consideration of the Veteran's lay statements, the examiner must:

(a) Determine whether the Veteran meets the DSM-IV criteria for a diagnosis of PTSD.

(b) If it is determined that the Veteran has PTSD, provide an opinion as to whether it is at least as likely as not (50 percent probability or higher) that the diagnosed PTSD is due to the Veteran's verified in-service stressors.

The examiner must give a detailed explanation for the reasons for the opinions provided. The medical reasons for accepting or rejecting the Veteran's theories of entitlement should be set forth in detail. If the examiner is unable to provide an opinion without resorting to speculation, he or she should explain the inability to provide an opinion, identifying precisely what facts could not be determined. In particular, he or she should comment on whether an opinion could not be provided because the limits of medical knowledge have been exhausted or whether additional testing or information could be obtained that would lead to a conclusive opinion.

4. Regardless of whether any stressors could be verified, and regardless of whether a PTSD examination is conducted, the Veteran must be afforded a VA mental health examination to determine whether he has a diagnosis of any psychiatric disability other than PTSD under DSM-IV criteria and, if so, whether it is due to his active duty service. The examiner must be informed that the Veteran's service treatment and personnel records are unavailable because they were destroyed in a fire.

All indicated tests and studies should be performed, to include psychological testing to determine whether the Veteran meets the DSM-IV criteria for any psychiatric disorder other than PTSD.

The examiner should elicit from the Veteran a complete history of his psychiatric symptoms and document such in the examination report. Then, following a review of the evidence of record, and with consideration of the Veteran's lay statements, the examiner must:

(a) Determine whether the Veteran meets the DSM-IV criteria for a diagnosis of any psychiatric disorder other than PTSD.

(b) With regard to each psychiatric disorder diagnosed, provide an opinion as to whether it is at least as likely as not (50 percent probability or higher) that the diagnosed psychiatric disorder is due to the Veteran's active duty service, to include, if applicable, any verified stressors. 

The examiner must give a detailed explanation for the reasons for the opinions provided. The medical reasons for accepting or rejecting the Veteran's theories of entitlement should be set forth in detail. If the examiner is unable to provide an opinion without resorting to speculation, he or she should explain the inability to provide an opinion, identifying precisely what facts could not be determined. In particular, he or she should comment on whether an opinion could not be provided because the limits of medical knowledge have been exhausted or whether additional testing or information could be obtained that would lead to a conclusive opinion.

5. The Veteran is notified that it is his responsibility to report for any scheduled examinations and to cooperate in the development of the claim and that the consequences for failure to report for a VA examination without good cause may include denial of the claim. 38 C.F.R. §§ 3.158, 3.655 (2016). In the event that the Veteran does not report for any scheduled examination, documentation showing that he was properly notified of the examination must be associated with the record.

6. Then, the Veteran's claim must be readjudicated. If the benefit sought on appeal is not granted to the Veteran's satisfaction, the Veteran and his representative must be provided a Supplemental Statement of the Case and be given an adequate opportunity to respond. Thereafter, the case should be returned to the Board for further appellate action.

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



_________________________________________________
MICHAEL MARTIN 
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2016).