﻿Citation Nr: AXXXXXXXX
Decision Date: 05/29/20 Archive Date: 05/29/20

DOCKET NO. 191030-65667
DATE: May 29, 2020

ORDER

Entitlement to service connection for hypertension, to include as secondary to exposure to herbicides, is denied.

Entitlement to service connection for heart disease, to include as secondary to hypertension, is denied.

Entitlement to service connection for stroke, to include as secondary to hypertension, is denied.

REMANDED

Entitlement to service connection for a back disability is remanded.

Entitlement to service connection for a bilateral foot disability, claimed as pes planus, is remanded.

FINDINGS OF FACT

1. The preponderance of the evidence indicates that the Veteran was not exposed to herbicides during active service and he did not serve in the Republic of Vietnam or in the Republic of Korea demilitarized zone (DMZ) between April 1968 and July 1969.

2. The preponderance of the evidence is against finding that the Veteran’s hypertension began during active service, manifested within one year of service, or is otherwise related to an in-service event, injury, or disease. 

3. The preponderance of the evidence is against finding that the Veteran’s heart disease began during active service, manifested within one year of service, or is otherwise related to an in-service event, injury, or disease.

4. The preponderance of the evidence is against finding that the Veteran’s stroke began during active service, manifested within one year of service, or is otherwise related to an in-service event, injury, or disease.

CONCLUSIONS OF LAW

1. The criteria for service connection for hypertension are not met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309. 

2. The criteria for service connection for heart disease are not met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

3. The criteria for service connection for stroke are not met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had active duty service from August 1979 to August 1982 in the United States Army. 

The Board notes that a rating decision was issued in March 2017. The Veteran appealed that decision in May 2017. A Statement of the Case was issued in February 2018. The Veteran submitted a substantive appeal in March 2018. In October 2018, the Veteran opted into the modernized review system and chose a supplemental claim. 38 C.F.R. § 19.2(d). In January 2019, a rating decision was issued finding new and relevant evidence was received, but denying the issues on the merits. The Veteran appealed that decision in June 2019. 

The Board acknowledges the Veteran’s assertion that all efforts were not made to obtain the Veteran’s separation examination. The Board notes that the record contains documentation that all available records from the National Personnel Records Center were shipped to VA and associated with the claims file. The record contains service treatment records spanning the entirety of the Veteran’s active service period, showing treatment through 1982 prior to the Veteran’s separation. The Veteran is aware of the missing separation report and has not indicated any additional actions that may result in obtaining the missing report. Therefore, the Board finds that a remand to attempt to obtain the single missing separation report of medical examination would be moot at this point. 

When a claimant’s medical records are lost or destroyed through no fault of the claimant, VA has a “heightened” duty to assist in the development of the claims. O’Hare v. Derwinski, 1 Vet. App. 365 (1991); Washington v. Nicholson, 19 Vet. App. 362, 369-70 (2005). The heightened duty to assist a Veteran in developing facts pertinent to his claim in a case where service records are presumed destroyed includes the obligation to search for alternative medical records. Moore v. Derwinski, 1 Vet. App. 401 (1991). Where service records are missing, the “heightened duty” discussed in the case of O’Hare does not include instituting a presumption that the missing service records would, if they still existed, necessarily support the appellant’s claim. Case law does not establish a heightened “benefit of the doubt,” only a heightened duty of the Board to consider the applicability of the benefit of the doubt, to assist the claimant in developing the claim, and to explain its decision when a Veteran’s medical records have been destroyed. See Ussery v. Brown, 8 Vet. App. 64 (1995). Similarly, the case law does not lower the legal standard for proving a claim, but rather increases the Board’s obligation to evaluate and discuss in its decision all of the evidence that may be favorable to a Veteran. Russo v. Brown, 9 Vet. App. 46 (1996). While it is unfortunate that the appellant’s separation examination is unavailable, the appeal must be decided on the evidence of record.

Service Connection

Service connection may be established for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303. Evidence of continuity of symptomatology from the time of service until the present is required where the chronicity of a chronic condition manifested during service either has not been established or might reasonably be questioned. 38 C.F.R. § 3.303(b); see also Walker v. Shinseki, 708 F.3d 1331, 1340 (Fed.Cir.2013) (holding that only conditions listed as chronic diseases in 38 C.F.R. § 3.309(a) may be considered for service connection under 38 C.F.R. § 3.303(b)). Regulations also provide that service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability was incurred in service. 38 C.F.R. § 3.303(d).

Generally, in order to prove service connection, there must be competent, credible evidence of (1) a current disability, (2) in-service incurrence or aggravation of an injury or disease, and (3) a nexus, or link, between the current disability and the in-service disease or injury. See, e.g., Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Pond v. West, 12 Vet. App. 341 (1999). 

Additionally, disability which is proximately due to or the result of a service-connected disease or injury shall be service connected. 38 C.F.R. § 3.310. The Board also notes that secondary service connection on the basis of aggravation is permitted under 38 C.F.R. § 3.310, and compensation is payable for that degree of aggravation of a nonservice-connected disability caused by a service-connected disability. Allen v. Brown, 7 Vet. App. 439 (1995); 38 C.F.R. § 3.310(b).

Certain chronic diseases may be service connected on a presumptive basis if manifested to a compensable degree in a specified period after service. 38 U.S.C. §§ 1112, 1113; 38 C.F.R. §§ 3.307, 3.309. That period is usually one year. 38 C.F.R. § 3.307 (a)(3). For the showing of chronic disease in service there is required a combination of manifestations sufficient to identify the disease entity and sufficient observation to establish chronicity at the time. 38 C.F.R. § 3.303 (b).

Under 38 C.F.R. § 3.303 (b), an alternative method of establishing and in-service disease or injury and a nexus for chronic diseases is through a demonstration of continuity of symptomatology. Barr v. Nicholson, 21 Vet. App. 303 (2007); see Savage v. Gober, 10 Vet. App. 488, 495-97 (1997); see also Clyburn v. West, 12 Vet. App. 296, 302 (1999). Continuity of symptomatology may be established if a claimant can demonstrate (1) that a condition was “noted” during service; (2) evidence of post-service continuity of the same symptomatology; and (3) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the post-service symptomatology. Savage, 10 Vet. App. at 495-96; see Hickson, 12 Vet. App. at 253 (lay evidence of in-service incurrence sufficient in some circumstances for purposes of establishing service connection); 38 C.F.R. § 3.303 (b).

The Board has reviewed all the evidence in the record. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that the evidence submitted by the appellant or obtained on his behalf be discussed in detail. Rather, the Board’s analysis below will focus specifically on what evidence is needed to substantiate each claim and what the evidence in the claims file shows, or fails to show, with respect to each claim. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) and Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000).

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under the laws administered by VA. VA shall consider all information and medical and lay evidence of record. Where there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

Herbicide Exposure

The Veteran had service in Korea from November 1979 to December 1980. The Veteran asserted that he was exposed to herbicides while stationed in the proximity of the Korean DMZ at Camp Pelham, Korea. 

If a veteran was exposed to an herbicide agent (to include Agent Orange) during active service, certain diseases shall be service-connected if the requirements of 38 C.F.R. § 3.307(a)(6) are met, even though there is no record of such disease during service, provided further that the rebuttable presumption provisions of 38 C.F.R. § 3.307(d) are also satisfied.

The Department of Defense (DoD) has acknowledged that herbicides were used in Korea from April 1968 through July 1969 along an area of the DMZ, including a strip of land 151 miles long and up to 350 yards wide from the fence to north of the civilian control line. The regulations provide that a veteran who, during active military, naval, or air service, served between April 1, 1968, and August 31, 1971, in a unit that, as determined by the DoD, operated in or near the Korean DMZ in an area in which herbicides are known to have been applied during that period, shall be presumed to have been exposed during such service to an herbicide agent, unless there is affirmative evidence to establish that the veteran was not exposed to any such agent during that service. 38 C.F.R. § 3.307(a)(6)(iv).

The Board notes that the Veteran’s service did not fall within the necessary dates for the presumption of exposure to herbicides. Service connection for herbicide exposure may be warranted without the presumption of exposure if the evidence indicates direct exposure to herbicides. The Regional Office (RO) reviewed chronologies submitted by the 8th United States Army. The records did not document the use, storage, spraying, or transportation of herbicides to include Agent Orange. In addition, the records did not document any specific duties performed by the Veteran’s unit along the DMZ. 

The Board acknowledges the Veteran’s assertion that he served in the area after the presumptive period for herbicide exposure, but that a 1998 U.S. Department of Health and Human Service, Public Health Service, Agency for Toxic Substances and Disease Registry, Study of the Toxicological Profile for Chlorinated Dibenzo-p-Dioxins noted that Agent Orange has a half-life of approximately 8.5 to 9 years and that these toxins may affect subsurface soil for up to 100 years. VA has set forth regulations that indicate specific time frames and geographic locations for the exposure to herbicides. The Board finds that the article showing an extended half-life does not overcome the VA’s regulations to indicate direct exposure. In any event, the evidence did not document any specific duties performed by the Veteran’s unit along the DMZ. 

Therefore, the Board finds that the preponderance of the evidence does not indicate that the Veteran was exposed to herbicides during his active service. 

1. Entitlement to service connection for hypertension, to include as secondary to exposure to herbicides.

Although the Veteran’s contentions regarding herbicide exposure are not applicable, the Board must still consider whether service connection may be granted on a direct basis. 

The question for the Board is whether the Veteran has a current disability that began during service or is at least as likely as not related to an in-service injury, event, or disease.

The Board concludes that, while the Veteran has a diagnosis of hypertension, the preponderance of the evidence is against finding that it began during active service, manifested within one year of service, or is otherwise related to an in-service injury, event, or disease. 

The Veteran’s service treatment records show no complaints, treatment, or diagnosis of high blood pressure. In April 1981, the Veteran specifically noted no treatment for high blood pressure. The only blood pressure reading during active service was noted in July 1980, at which time the Veteran’s blood pressure was 110/78, which was lower than the 130/70 noted on the Veteran’s June 1979 enlistment report of medical examination. 

While the Veteran believes his hypertension is related to exposure to herbicides, the Board reiterates that the preponderance of the evidence weighs against findings that any exposure occurred. In addition, the preponderance of the evidence is against a finding that his hypertension manifested during service, within one year of service, or is causally related to his active service. As the preponderance of the evidence is against the claim for service connection for heart disease, the benefit of the doubt rule does not apply. 38 C.F.R. § 5107; 38 C.F.R. § 3.102.

2. Entitlement to service connection for heart disease, to include as secondary to hypertension.

The Veteran contends that he has heart disease secondary to his exposure to herbicides or, in the alternative, secondary to his hypertension. 

As the preponderance of the evidence indicates that the Veteran was not exposed to herbicides during his active service, any claim of entitlement to service connection based on that exposure is moot.

The Board notes that as entitlement to service connection for hypertension was denied in the above decision, any claim of service connection on a secondary basis is moot. However, the Board must address the issue of entitlement to service connection for heart disease on a direct basis. 

The question for the Board is whether the Veteran has a current disability that began during service, manifested within one year of service, or is at least as likely as not related to an in-service injury, event, or disease.

The Board concludes that, while the Veteran has a diagnosis of coronary artery disease status post coronary artery bypass graft, the preponderance of the evidence is against finding that it began during active service, manifested within one year of service, or is otherwise related to an in-service injury, event, or disease. 

The Veteran’s service treatment records show no complaints, treatment, or diagnosis of heart disease. The Veteran had numerous complaints noted in his service treatment records, without any indication of symptoms of a heart condition. 

While the Veteran believes his heart disease is related to exposure to herbicides or to his hypertension, the Board reiterates that the preponderance of the evidence weighs against findings that any exposure occurred and against entitlement to service connection for hypertension. In addition, the preponderance of the evidence is against a finding that his heart disease manifested during service manifested within one year of service, or is causally related to his active service. As the preponderance of the evidence is against the claim for service connection for heart disease, the benefit of the doubt rule does not apply. 38 C.F.R. § 5107; 38 C.F.R. § 3.102.

3. Entitlement to service connection for stroke, to include as secondary to hypertension.

The Veteran contends that he had a stroke secondary to his hypertension. 

The Board notes that as entitlement to service connection for hypertension was denied in the above decision, any claim of service connection on a secondary basis is moot. However, the Board must address the issue of entitlement to service connection for a stroke on a direct basis. 

The question for the Board is whether the Veteran has a current disability that began during service or is at least as likely as not related to an in-service injury, event, or disease.

The Board concludes that, while the Veteran has had a diagnosed stroke, the preponderance of the evidence is against finding that it began during active service, manifested within one year of service, or is otherwise related to an in-service injury, event, or disease. 

The Veteran’s service treatment records show no complaints, treatment, or diagnosis of a stroke during active service. The Board notes that the Veteran had numerous complaints noted in his service treatment records, without any indication of symptoms of a stroke. 

While the Veteran believes his stroke is related to his hypertension, the Board reiterates that the preponderance of the evidence weighs against entitlement to service connection for hypertension. In addition, the preponderance of the evidence is against a finding that his stroke occurred during service, manifested within one year of service, or is causally related to his active service. As the preponderance of the evidence is against the claim for service connection for a stroke, the benefit of the doubt rule does not apply. 38 C.F.R. § 5107; 38 C.F.R. § 3.102.

REASONS FOR REMAND

1. Entitlement to service connection for a back disability is remanded.

The issue of entitlement to service connection for a back disability is remanded to correct a duty to assist error that occurred prior to the August 2019 rating decision on appeal. 

A February 2017 private medical opinion indicates that the Veteran’s bilateral foot disability is secondary to radiculopathy from his back disability; however, without rationale.

The Agency of Original Jurisdiction (AOJ) did not obtain a VA examination prior to the August 2019 rating decision on appeal regarding whether the Veteran’s current back complaints are causally related to his complaint of back pain during service. However, based on the evidence associated with the claims file prior to the August 2019 rating decision, the Board finds that a VA examination is required to determine whether the Veteran has a current disability that manifested during service or is causally related to service.

2. Entitlement to service connection for a bilateral foot disability, claimed as pes planus, is remanded.

The issue of entitlement to service connection for a bilateral foot disability is remanded to correct a duty to assist error that occurred prior to the August 2019 rating decision on appeal. 

The Board initially notes that mild bilateral pes planus was indicated on the induction examination in June 1979.

A February 2017 private medical opinion indicates that the Veteran’s bilateral foot disability is secondary to radiculopathy from his back disability; however, without rationale.

The Agency of Original Jurisdiction (AOJ) did not obtain a VA examination prior to the August 2019 rating decision on appeal regarding whether the Veteran has a current foot disability that was caused or aggravated by the Veteran’s active service to include any back injury. However, based on the evidence associated with the claims file prior to the August 2019 rating decision, the Board finds that a VA examination is required to determine whether the Veteran has a current foot disability that was caused or aggravated by the Veteran’s active service to include any back injury.

The matters are REMANDED for the following action:

1. Schedule the Veteran for an examination by an appropriate clinician to determine the nature and etiology of any back disability. Following a complete review of the evidence of record and with consideration of the Veteran’s lay statements, assuming the statements are credible for the limited purpose of the request herein, the medical professional is requested to provide the following opinion, whether the Veteran has a back disability that is at least as likely as not related to an in-service injury, event, or disease, including the in-service complaint of back pain, or manifested within one year of service with regard to arthritis. The examiner should address the February 2017 private nexus opinion. 

A complete rationale must be provided for all opinions offered. If any opinion cannot be offered without resort to mere speculation, the examiner must fully explain why this is the case and identify what, if any, additional evidence would potentially allow for a more definitive opinion. 

2. Schedule the Veteran for an examination by an appropriate clinician to determine the nature and etiology of any bilateral foot disability, to include the pre-existing pes planus. Following a complete review of the evidence of record and with consideration of the Veteran’s lay statements, assuming the statements are credible for the limited purpose of the request herein, the medical professional is requested to provide the following opinions: 

a.) Whether the Veteran has a bilateral foot disability that is at least as likely as not related to an in-service injury, event, or disease, including the in-service complaint of back pain.

b.) Whether the Veteran’s pre-existing pes planus was aggravated by his active service. 

c.) Whether the Veteran has a bilateral foot disability that is at least as likely as not (1) proximately due to the Veteran’s back disability, or (2) aggravated beyond its natural progression by his back disability. The examiner should address the February 2017 private nexus opinion. 

A complete rationale must be provided for all opinions offered. If any opinion cannot be offered without resort to mere speculation, the examiner must fully explain why this is the case and identify what, if any, additional evidence would potentially allow for a more definitive opinion.

 

 

Jennifer White

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board Patricia Veresink, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.