Citation Nr: AXXXXXXXX
Decision Date: 05/28/21 Archive Date: 05/28/21

DOCKET NO. 200916-109557
DATE: May 28, 2021

ORDER

Service connection for bilateral hearing loss (BHL) is denied.

Service connection for tinnitus is denied.

FINDINGS OF FACT

1. BHL did not manifest in service or within one year of service and is not otherwise attributable to service.

2. Tinnitus did not manifest in service and is not otherwise attributable to service.

CONCLUSIONS OF LAW

1. The criteria for service connection for BHL have not been met. 38 U.S.C. § 1101, 1110, 1113, 1131, 1137, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309.

2. The criteria for service connection for tinnitus have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.304.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had active duty service in the United States Army from July 1958 to July 1961. The Veteran's military occupational specialty (MOS) was that of a multi-engine airplane mechanic.

This appeal to the Board of Veterans' Appeals (Board) arose from a September 2020 rating decision of a Department of Veterans Affairs (VA), in which the Agency of Original Jurisdiction (AOJ) denied service connection for the two issues above.

In September 2020, the Veteran filed a VA Form 10182, Decision Review Request: Board Appeal (Notice of Disagreement (NOD)), in which he elected the Direct Review docket. Therefore, the Board may only consider the evidence of record at the time of the agency of original jurisdiction (AOJ) decision on appeal. 38 C.F.R. § 20.301.

Service Connection

The Veteran asserts that BHL and tinnitus were incurred in, aggravated by, or otherwise attributable to, active duty service.

In order to establish service connection on a direct basis, the record must contain competent evidence of: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F. 3d 1163, 1167 (Fed. Cir. 2004). Disorders diagnosed after discharge will still be service connected if all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d); see also Combee v. Brown, 34 F. 3d 1039, 1043 (Fed. Cir. 1994). In the absence of proof of a present disability there can be no valid claim. Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992).

Competent medical evidence is evidence provided by a person who is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions. Competent medical evidence may also include statements conveying sound medical principles found in medical treatises. It also includes statements contained in authoritative writings, such as medical and scientific articles and research reports or analyses. 38 C.F.R. § 3.159(a)(1). 

Competent lay evidence is any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159(a)(2). This may include some medical matters, such as describing symptoms or relating a contemporaneous medical diagnosis. Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007); Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011). If the evidence is competent, the Board must then determine if the evidence is credible. Barr v. Nicholson, 21 Vet. App. 303, 308 (2007). 

After determining the competency and credibility of evidence, the Board must then weigh its probative value. In this regard, the Board may properly consider internal inconsistency, facial plausibility, and consistency with other evidence submitted on behalf of the claimant. Caluza v. Brown, 7 Vet. App. 498, 511 (1995).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination, the benefit of the doubt is afforded the claimant. 38 U.S.C. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

Certain chronic diseases, including diseases of the nervous system such as bilateral sensorineural hearing loss, will be presumed related to service if they were shown as chronic in service (or within a presumptive period) and there are subsequent manifestations of the same chronic diseases; or if they manifested to a compensable degree within a presumptive period following separation from service (in this case, one year); or if they were noted in service, with continuity of symptomatology since service. See 38 U.S.C. §§ 1101, 1112; 38 C.F.R. §§ 3.307, 3.309.

Hearing loss for the purposes of VA disability compensation is considered a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, and 4000 Hertz is 40 decibels or greater; or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, and 4000 hertz are 26 decibels or greater; or when the speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385. 

In addition to dictating objective test results, a VA audiologist must fully describe the functional effects caused by a hearing disability in his or her final report. Martinak v. Nicholson, 21 Vet. App. 447, 455 (2007).

Tinnitus is a condition capable of lay observation and diagnosis. See Charles v. Principi, 16 Vet. App. 370, 374 (observing that "ringing in the ears is capable of lay observation"). To the extent that tinnitus is capable of lay observation, the Veteran is competent to report his symptoms. 

Initial Consideration

A review of the evidence of record reveals that the RO has made several attempts to obtain all of the Veteran's military personnel records. See, e.g., February 5, 2020 Military Personnel Record (4 separate entries, to include the first from top in the record produced by the National Archives and Records Administration). As noted below, the Veteran's May 1961 separation report of medical examination includes a notation of "dx [diagnosis] by auditoryLOD [line of duty] yes". Regrettably, this vaguely referenced LOD is no longer extant. Consequently, the Board has a heightened obligation to explain its findings and conclusions and to consider carefully the benefit-of- the-doubt doctrine. See O'Hare v. Derwinski, 1 Vet. App. 365, 367 (1991).

The O'Hare precedent does not lower the threshold for an allowance of a claim; there is no reverse presumption for granting a claim. The legal standard for proving a claim is not lowered; rather, the Board's obligation to discuss and evaluate evidence is heightened. See Russo v. Brown, 9 Vet. App. 46 (1996). Case law does not establish a heightened "benefit of the doubt," only a heightened duty of the Board to consider the applicability of the benefit-of-the-doubt doctrine, to assist the claimant in developing the claim, and to explain its decision when a claimant's medical records have been lost or destroyed. See Ussery v. Brown, 8 Vet. App. 64 (1995). Thus, a missing LOD is indeed unfortunate, but its absence does not obviate the need for the Veteran to still have competent and credible evidence supporting his claim for service connection. See Milostan v. Brown, 4 Vet. App. 250, 252 (1993) (citing Moore v. Derwinski, 1 Vet. App. 401 (1991) and O'Hare, 1 Vet. App. at 367).

Evidence and Analysis

The Board initially notes that the September 2020 rating decision documented favorable findings including that service personnel records verify the Veteran's MOS as a multi-engine airplane mechanic and thereby conceded his exposure to a high degree of military noise. The September 2020 rating decision additionally noted that the Veteran is diagnosed with bilateral hearing loss and tinnitus, as documented in the June 2020 VA examination. The Board is bound by these favorable findings.

A June 1958 enlistment report of medical examination includes a finding of left ear hearing acuity of 15/15.

Upon a June 1959 audiogram schematic, a clinician indicated an 11-decibel loss in the left ear and a 5-decibel loss in the right ear. During this month, a service statement record (STR) shows the Veteran endorsed difficulty hearing since he started working on aircraft, noting that his right ear was usually worse. A clinician indicated that the Veteran did not have an ear infection or ear drainage.

In the Veteran's May 1961 separation report of medical examination, a clinician reported normal clinical evaluations of the ears; drums; lungs; and neurological status. This report did not include a complete audiogram; however, the military clinician indicated hearing acuity of 15/15. In the summary of defects section of this report, the clinician indicated "dx [diagnosis] by auditoryLOD yes".

Upon a general VA examination in June 1979, the clinician indicated that the Veteran conveyed he had injured his right knee during basic training in 1958. However, the clinician's examination report did not mention either BHL or tinnitus complaints. Additionally, the clinician did not provide any findings indicative of either BHL or tinnitus. This clinician did indicate that the Veteran reported his civilian occupation was police officer.

In his January 2020 VA Form 21-526EZ, the Veteran contended that BHL and tinnitus are attributable to the "loud noise environment" in service (as an aircraft mechanic).

In a September 2014 private medical record, Dr. B. indicated that the Veteran conveyed he had no difficulty hearing, no ear pain, no tinnitus, and no [sense of ear] fullness.

In a June 2019 VA audiology note, an audiologist indicated that the Veteran complained that BHL. The audiologist noted that the Veteran endorsed service noise exposure of explosions and civilian noise exposure of gunfire and machinery. The Veteran also endorsed tinnitus. Upon pure tone testing, the right ear showed mild to moderate-severe sensorineural hearing loss (SNHL) and the left ear showed mild to severe SNHL. Right ear speech recognition was poor and left ear speech recognition was fair, rendering binaural speech recognition of 88 percent (80 dB). This audiologist provided a diagnosis of bilateral sensorineural hearing loss.

A VA audiology note of January 2020 discloses that the Veteran sought hearing aid assistance. A clinician reported the Veteran articulated that he had difficulty hearing the voices of his grandchildren. Upon examination, the Veteran's bilateral external auditory canals were clear. The clinician indicated that the Veteran was advised as to care and maintenance of hearing aids; communication strategies; and benefits and limitations of amplification, The clinician noted that she communicated this information in an age-appropriate mannervia a slow rate of speech in a quiet environment facing the Veteran.

In June 2020, the Veteran underwent a VA hearing loss and tinnitus examination. An audiologist reviewed the claims file; considered the Veteran's lay accounts of his medical and audiological history; and conducted an appropriate evaluation. Pure tone thresholds, in decibels, were as follows:

 HERTZ 

 500 1000 2000 3000 4000

RIGHT 20 35 60 60 60

LEFT 15 35 65 65 55

Speech audiometry revealed speech recognition ability of 80 percent in the right ear and 88 percent in the left ear. The audiologist provided a diagnosis of bilateral sensorineural hearing loss in the frequency range of 5004000 Hz. The Veteran did not indicate that BHL impacted his ordinary conditions of life, including his ability to work. See Martinak, 21 Vet. App. 447.

Upon a comprehensive review of the totality evidence, to include findings from the instant evaluation, the June 2020 VA audiologist opined that the Veteran's current BHL was less likely than not caused by or the result of in-service noise exposure. As a rationale for this negative nexus opinion, the audiologist first conceded in-service noise exposure; however, the evidence of record fails to show any specific noise injury in service. This is not at all contradictory. An 2005-06 Institute of Medicine (IOM) study (at the behest of Congress) found that there is insufficient evidence in both laboratory animals and humans to determine whether permanent noise-induced hearing loss can develop much later in one's lifetime, that is to say, long after the cessation of noise exposure. Consequently, highly specialized and commissioned audiological studies do not support that the Veteran's noise exposure, approximately 6 decades earlier, caused current BHL. The audiologist also provided a negative nexus opinion as to tinnitus and direct service connection. Here, the audiologist, in part, recapitulated the rationale above and included an extensive review of the evidence, which failed to show endorsements (or lay complaints of chronicity) of tinnitus from service through the date of evaluation.

The Veteran believes that BHL and tinnitus were incurred in, aggravated by, or otherwise attributable to, active service. Indeed, he is competent to report discernable hearing difficulty and discernable ringing in the ears. See Jandreau, 492 F. 3d 1372; Charles, Vet. App. 370. The Board recognizes the Veteran's belief in this etiology and theory of causation. Nevertheless, as a lay person, the Veteran lacks the highly specialized training in audiological and audiological research (Cf. IOM) to render complex audiological opinions as to causation (to include conceded military noise exposure many decades earlier) and etiology. 38 C.F.R. § 3.159. As such, this lay evidence does not constitute competent audiological evidence.

Here, the Board takes particular notice of Dr. B.'s September 2014 record, in which this private physician indicated that that the Veteran conveyed he had no difficulty hearing, no ear pain, no tinnitus, and no [sense of ear] fullness. Indeed, this notation indicates that tinnitus was not chronic in natureat least through the September 2014.

The Board assigns substantial probative weight to June 2020 VA audiologist's opinion. This audiology-competent clinician reviewed the claims file; considered the Veteran's lay accounts of his medical and audiological history; and conducted an appropriate evaluation. Upon contemplation of the totality of evidence, this expert provided a negative nexus opinion as to both BHL and tinnitus. And, the audiologist supported this opinion with a robust evidence-infused and audiological research-informed rationale.

The current disability and in-service injury prongs of BHL and tinnitus are present; however, without nexus, possibilities of establishing service connection for BHL and tinnitus on direct bases are foreclosed. See Shedden, 381 F. 3d 1163.

As the evidence of record fails to reveal that bilateral sensorineural hearing loss manifested (in any way) within one year of the Veteran's separation from service, establishing service connection is also not possible on a presumptive basis in this case. See 38 C.F.R. §§ 3.307, 3.309.

Consequently, the preponderance of evidence is against the Veteran's two service connection claims. As such, there is no doubt to be resolved. See 38 U.S.C. § 5107(b); Gilbert, 1 Vet. App. 49. 

 

 

Katherine Kiemle Buckley

Acting Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board B. J. Komins, Counsel

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.